# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 21, 2010

## STATE OF TENNESSEE v. PATRICK RICO EDWARDS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-A-176     Monte Watkins, Judge**

---

**No. M2009-01277-CCA-R3-CD - Filed February 11, 2011**

---

Defendant, Patrick Rico Edwards, was indicted by the Davidson County Grand Jury for murder in the perpetration of a theft and first-degree premeditated murder, both in violation of Tenn. Code Ann. § 39-13-202. After a jury trial began on August 21, 2008, the trial court granted a mistrial. On March 19, 2009, Defendant pleaded guilty to the lesser-included offense of second degree murder. Following a sentencing hearing on May 12, 2009, Defendant was sentenced to serve 21 years in confinement at 100 percent. In this appeal, Defendant challenges the length of his sentence. After a thorough review of the record, we conclude that Defendant's sentence is not excessive and affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

C. Dawn Deaner, District Public Defender; Jeffrey A. DeVasher, Assistant Public Defender; and Jonathan Augusta, Assistant Public Defender, Nashville, Tennessee, for the appellant, Patrick Rico Edwards.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; Deborah Housel, Assistant District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## *Guilty Plea Hearing*

At the plea hearing, the State gave the following factual basis for Defendant's guilty plea:

> As Your Honor recalls from the case that was tried in August, on October 6th, 2006, Jessica Toombs, Joey York, Brandon Morrison, and Keith Casselberry, and Christopher Hudson went to Nashboro Village to buy ecstasy from Patrick Rico Edwards and Ryan Scott Lewis. When they arrived at the scene Christopher Hudson went over to the car that was driven by the defendant Patrick Edwards. As you heard from witnesses that were on the scene, Judge – like Ms. Laquita Weaver and, also, Eric Richey – Mr. Hudson leaned into the car and saw Mr. Edwards' gun, became frightened and started running back behind the car. Patrick Rico Edwards got the gun and shot Christopher Hudson in the back as he was running. Mr. Hudson tried to crawl to the sidewalk, and as Your Honor remembers, if you'll recall the testimony, Mr. Edwards got out of the car and went over to where Mr. Hudson was lying. Had this case proceeded to trial the State would have called Mr. Edwards co-defendant, Ryan Scott Lewis, who would have testified that they intended to rob Christopher Hudson, that Mr. Edwards did take over a hundred dollars from the body of Christopher Hudson, that they then went back to the apartment and when they got back to the apartment they divided the proceedings [sic]. Your Honor, also, recalls that the police were taken to the apartment where Ryan Scott Lewis and Patrick Edwards were, and that, then, they were taken by a man by the name of Corey Ashley to David Barnett's home where they retrieved the murder weapon. And as you, also, will recall, Judge, TBI Agent Don Carman testified in August that there was a match between the murder weapon and the bullet and casing that were found at the scene.
>
> Judge, the victim's family is here today. They do approve of this disposition. That would have been the State's proof had the case proceeded to trial on Monday. And based upon these facts the State recommends the disposition.

At the sentencing hearing, Detective Robert Swisher testified that on the night of the offense, which occurred on October 6, 2006, he went to Nashboro Village, where the offense occurred and spoke to two individuals at the scene, Joey York and Brian Keith Casselberry. He then went to an apartment at Dover Glen, approximately one and a half or two miles away. When he entered the apartment, he saw Defendant "jump from the bedroom into the hallway with no shirt and then jump back into the bedroom." Defendant appeared to be "quite nervous." Detective Swisher took Defendant and his co-defendant, Ryan Lewis, into custody. Detective Swisher later interviewed Defendant. During that interview, Defendant told detectives that he had completed the eighth grade and that he lived in Nashville. He told detectives that his co-defendant, Ryan Lewis, had gotten a phone call from the victim asking for drugs. Defendant drove himself and Mr. Lewis to meet the victim. Defendant stated that the victim, who was standing at the driver's side window of the vehicle, tried to grab the drugs from Mr. Lewis, who was reaching across Defendant. The victim then swung a stick at them and grabbed Defendant's jacket. Defendant pulled out a gun, and the victim started running. Defendant told detectives that he fired the gun "to scare him off." Defendant hit another car as he drove away. Defendant told detectives that he had purchased the gun from a man on the street for one hundred dollars. Detective Swisher also testified that Defendant's fingerprint was found on a box of ammunition.

Ryan Lewis testified that he knew Defendant through Defendant's cousin, Corey Ashley. He testified that he knew the victim in this case, Christopher Hudson, because he had sold drugs to him before at Dover Glen Apartments. On the evening of the crime, Mr. Hudson called Mr. Lewis, while Mr. Lewis was with Defendant and Mr. Ashley, and had requested to purchase some ecstasy pills. Mr. Lewis initially told Mr. Hudson that he did not have any pills, but in another conversation later that evening, he told Mr. Hudson that Defendant and Mr. Ashley had drugs to sell.

Mr. Lewis testified that Defendant, Mr. Ashley, and he discussed a plan to rob Mr. Hudson. Defendant and Mr. Lewis drove to Nashboro Village and pulled in facing Mr. Hudson's vehicle. Mr. Ashley drove another vehicle and his role in the robbery was to be the "lookout." Mr. Hudson walked to the driver's side window of the vehicle where Defendant was, and leaned into the car. Mr. Lewis testified that Defendant pulled out the pistol and demanded the money. Mr. Hudson turned to run away, and Defendant shot him. Mr. Lewis opened the passenger's side door to run, and Defendant pointed the pistol at him and told him to get back in the car. Defendant got out of the car to retrieve the drugs and the money that fell on the ground. Mr. Lewis did not see that the victim had any kind of weapon; however, he testified, someone threw something "like a stick, or a bat, or something" at the car as they drove away. As they left Nashboro Village, Mr. Lewis saw Corey Ashley speed

away in his vehicle. Defendant and Mr. Lewis returned to Dover Glen Apartments. On the way there, Defendant told Mr. Lewis to change his cell phone number, which he did. When they arrived back at the apartments, Mr. Ashley was there. Mr. Ashley made a phone call to get rid of the gun. The three men divided up the money. The police arrived about two hours later. Mr. Lewis testified that he initially lied to police.

Brian Keith Casselberry, a friend of the victim, and Wendy Hudson, the victim's mother, testified as to how the loss of the victim has affected their lives and asked the court to impose the maximum sentence.

Pamela Rooks, Defendant's mother, testified that Defendant was nineteen or twenty years old at the time of his arrest. He had not been living with her for a few months before his arrest because Defendant "was doing some things that [she] didn't approve of." She testified that Defendant had dropped out of school after the seventh or eighth grade. Mrs. Rooks testified that Defendant's father left home when Defendant was about one-year old. Defendant's father was not consistently involved with Defendant. Defendant went to live with his father for one year when Defendant was thirteen years old. Mrs. Rooks knew that Defendant had smoked marijuana, but she denied knowledge of any other drug use. She testified that when her son was about eighteen years old, he had attempted suicide by taking pills and was hospitalized for about one week. Several of Defendant's family members prepared letters in support of Defendant, which were admitted into evidence.

*Analysis*

When a defendant challenges the length, range or manner of service of a sentence, this Court must conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). As the Sentencing Commission Comments to this section note, the burden is on the appealing party to show that the sentencing is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts (2006). This means that if the trial court followed the statutory sentencing procedure, made findings of facts which are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing under the Sentencing Act, Tennessee Code Annotated section 40-35-103 (2006), the appellate court may not disturb the sentence even if a different result was preferred. *State v. Ross*, 49 S.W.3d 833, 847 (Tenn.2001).

In conducting a de novo review of a sentence, we must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the

parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 4-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). We must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2006).

At the conclusion of the sentencing hearing in this case, the trial court sentenced Defendant, as a Range I standard offender to serve 21 years for his second degree murder conviction, for which the possible sentence range is 15 to 25 years. The trial court first considered mitigating factors: 1) that Defendant, because of his youth, lacked substantial judgment in committing the offense; and 2) that Defendant admitted responsibility for the offense. *See* Tenn. Code Ann. § 40-35-113(6). The trial court then found and applied the following enhancement factors: 1) that Defendant has a previous history of criminal behavior, including drug use; 2) that Defendant possessed or employed a firearm in the commission of the offense; and 3) that Defendant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(1), -(9), and -(10).

Defendant appeals the trial court's decision, arguing that his sentence is excessive. The State responds that the trial court properly considered enhancement factors in determining Defendant's sentence.

Defendant contends that the trial court erred in applying enhancement factor (10), that Defendant had no hesitation about committing a crime when the risk to human life was high. The trial court noted that "anytime you fire a weapon someone can possibly be seriously injured or killed, period, unless you're at a shooting range. . . ." The trial court also found that Defendant fired a gun in a residential neighborhood. Where a high risk to human life is inherent in the underlying conviction, as is the case here, enhancement factor (10) applies only if the defendant disregarded a high risk to the life of a person other than the victim. *State v. Zonge*, 973 S.W.2d 250, 259 (Tenn. Crim. App. 1997). The evidence at the sentencing hearing also established that Defendant turned the gun on his co-defendant Mr. Lewis after shooting the victim, and told Mr. Lewis to get back in the car when Mr. Lewis tried to leave. While this action by Defendant might establish evidence of a separate assault offense against Mr. Lewis, it was not part of the offense of second degree murder committed by Defendant.

Enhancement factor (10), by its language, as interpreted by case law, applies to the crime for which Defendant is being sentenced. Speculation of where a bullet could possibly

go does not constitute proof of facts to support application of this factor. *See State v. Thomas R. Baldwin*, No. 01C01-9612-CR-00530, 1998 WL 426199 at *4, *8 (Tenn. Crim. App. at Nashville, July 29, 1998), *perm. app. denied* (Tenn. Feb. 16, 1999). We agree with Defendant that enhancement factor (10) does not apply. However, this does not result in Defendant being entitled to a reduction in the sentence imposed by the trial court. *See State v. Winfield*, 23 S.W.3d 279 (Tenn. 2000) (the wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence). Other than misapplication of one enhancement factor, the trial court's sentencing considerations and findings support the sentence imposed.

The trial court found applicable two other enhancement factors supported by the evidence that Defendant does not challenge on appeal. In our review of Defendant's sentence, we are "bound by [the] trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). This Court cannot review the weight placed on enhancement factors. Rather, our review is limited to whether the enhancement factors are supported by the record and appropriately applied. The Defendant is responsible for showing that the sentence is excessive, and we conclude that he did not meet this burden. Defendant is not entitled to relief in this appeal.

## CONCLUSION

Based upon the foregoing, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-6-